UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER JONES, #235079,

                    Plaintiff,             Case No. 11-cv-13115
                                        Honorable Thomas L. Ludington
       v.                        Magistrate Judge David R. Grand

D. VANDECASTEELE, *et al.*,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [9]

Before the court is Defendants' Motion for Summary Judgment [9]. An Order of Reference for Screening and General Case Management [13] was entered on January 4, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [9] be **GRANTED**.

## II.     REPORT

### A.     Factual Background

Walter Lee Jones, or Jones-Bey ("Plaintiff"), is currently incarcerated by the Michigan Department of Corrections ("MDOC"). At all relevant times, Plaintiff was housed at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan. On July 19, 2011, Plaintiff

commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, alleging violations of his rights under the First and Fourteenth Amendments of the United States Constitution, claiming retaliation and conspiracy by prison officials.   All of the named defendants ("Defendants") are SLF employees: Assistant Deputy Warden Kelly Best, Classification Director Julius Mayfield, and Corrections Officers Dujuna VandeCasteele and Ray Sholtz.   At all times relevant to this lawsuit, Officer VandeCasteele was working "out-of-class" as an Acting Assistant Librarian.   Plaintiff was employed as a Legal Writer who worked in the law library under Officer VandeCasteele's supervision.

Plaintiff alleges that, on March 18, 2010, he submitted written correspondence to the SLF Warden's Office, complaining about a conversation he claims to have overheard between Officers VandeCasteele and Sholtz.  (Doc. #1 at ¶1).  Plaintiff states that both officers were given copies of his letter to the Warden.  (*Id*. at ¶¶1, 8).

On April 9, 2010, according to Plaintiff, Sholtz began harassing Plaintiff when the two met in a hallway of the "Programs Building" where the law library is located.  (*Id*. at ¶¶1-2). Plaintiff notified Sholtz that if the harassment did not stop, Plaintiff would file a grievance.  (*Id*. at ¶2).  Plaintiff alleges that when he attempted to resolve the incident verbally, Sholtz threatened to write a misconduct ticket on Plaintiff and then to claim that any related grievance that Plaintiff might file was in retaliation for the ticket.  (*Id*. at ¶¶2-3).

Plaintiff alleges that, after encountering Sholtz in the hallway, he proceeded to the law library and into the Librarian's Office, where VandeCasteele used "profane and abusive language," asking why Plaintiff had been in the nearby quartermaster area instead of at work, and informing Plaintiff that he had made her late for her rounds in segregation.  (*Id*. at ¶¶9-10). When Plaintiff told her that he had been at the quartermaster exchanging state-issued clothing,

VandeCasteele stated that she had not given Plaintiff permission to do so.  (*Id.* at ¶10).  Plaintiff told VandeCasteele that he did not need her permission because he had received permission from another staff member; he also informed her that he would be filing a grievance regarding the "abusive, demeaning and humiliating language" she had used toward him.  (*Id.* at ¶11).  Plaintiff alleges that VandeCasteele responded by telling him that he would be fired if Sholtz wrote a misconduct ticket against for Plaintiff being out of place.  (*Id.* at ¶ 12).  Plaintiff then told VandeCasteele that he had not been out of place, and that he would file a written complaint with the Warden's Office "to report her threat to conspire with Sholtz to get Plaintiff fired." (*Id.* at ¶12).  Plaintiff alleges that VandeCasteele then "became irate, raised her voice in an angry tone without cause or justification," threatened to "make sure" Plaintiff wouldn't come back, and "arbitrarily and capriciously sent Plaintiff to his housing unit to lock-up stating that he was laid-in for the day."  (*Id.* at ¶13).

On the same date, April 9, 2010, Sholtz wrote a Major Misconduct Report ("MMR") on Plaintiff, in which he named VandeCasteele as an "employee witness" and stated:

> During his detailed hours, I observed [Plaintiff] in the quartermaster area. Jones is detailed as a Legal Writer in the law library . . . At no time did Jones have permission from any staff member to be in that area or not on his detail.

(*Id.* at ¶5).  Plaintiff states that he was not out of place, he committed no violation of MDOC rules, and that VandeCasteele submitted a false statement to the Administrative Law Judge ("ALJ") in support of Officer Sholtz's MMR.  (*Id.* at ¶6).  Plaintiff alleges that Sholtz and VandeCasteele conspired to fabricate the MMR in retaliation for Plaintiff's March 18, 2010 letter to the Warden's Office and his statement on April 9, 2010 that he intended to file a grievance against the officers.  (*Id.*).

Also on April 9, 2010, VandeCasteele filled out a negative "Prisoner Program and Work Assignment Evaluation" (MDOC form CSJ-363, or "363"), noting that Plaintiff had been

3

argumentative when told to return to his unit, and submitted for Mayfield's and Best's signatures a "Lay-In Notice" requesting that Plaintiff be suspended from his job pending the resolution of the MMR issued by Sholtz.  (*Id.* at ¶¶14, 26; Doc. #9 at Ex. D).  Plaintiff asserts that the negative 363 Work Evaluation resulted in Plaintiff losing favorable behavior points on a Security Classification Screen dated June 21, 2010.  (Doc. #1 at ¶17)

Then, between April 11 and April 23, 2010, Plaintiff filed a number of letters, grievances, and complaints against Defendants, "alleging staff corruption, falsification of misconduct report, and retaliatory suspension from job."  (*Id.* at ¶¶19-20).  Plaintiff reports that on May 3, 2010, Mayfield and Best met with him to inform him that he was being terminated from his employment in the law library because there were too many problems between Plaintiff and the staff members, including Defendants, who worked in the Programs Building.  (*Id.* at ¶21).  The basis Mayfield and Best offered for Plaintiff's dismissal was that, pursuant to ¶DD[1] of MDOC Policy Directive 05.01.100, Plaintiff's conduct had violated the integrity of his work assignment, thus creating a security concern.  (*Id.* at ¶27).  Plaintiff explained that he had not been in the Programs Building since the incidents of April 9, 2010, and that therefore he could not have caused any problems.  (*Id.* at ¶22).  Plaintiff alleges that Mayfield then retorted that Plaintiff's grievances and "unnecessary complaints against staff" were the problem, and Defendant told Plaintiff he had created his own problems by going over the heads of SLF staff members and complaining to MDOC's central office in Lansing.  (*Id.* at ¶¶23, 24).

Finally, Plaintiff alleges that he has been treated differently from similarly situated prisoners, naming two other inmates who received major misconduct tickets, but who were not suspended while their MMRs were pending nor subsequently terminated from their work assignments.  (*Id.* at ¶¶25-39).

---

[1] Although Plaintiff references ¶DD, it is actually ¶EE that is relevant.  (Doc. #9 at Ex. I).

### B.    Procedural Background

Plaintiff's four-count complaint states the following claims: (1) as to Officer Sholtz, Plaintiff alleges First Amendment retaliation and conspiracy claims in relation to the MMR issued on April 9, 2010; (2) as to Officer VandeCasteele, Plaintiff alleges First Amendment retaliation and conspiracy claims in relation to the 363 Work Evaluation of April 9, 2010, the Lay-In Notice requesting Plaintiff's suspension from his job, and the investigation statement submitted to the ALJ in support of the MMR issued by Officer Sholtz; (3) as to Defendants Mayfield and Best, Plaintiff alleges a First Amendment retaliation claim with respect to the termination of his employment as a legal writer; and, (4) also as to Defendants Mayfield and Best, Plaintiff alleges a Fourteenth Amendment equal protection claim with respect to his treatment as compared to the treatment of similarly situated inmates. (Doc. #1 at 5-12). Naming Defendants VandeCasteele, Mayfield, and Best in their official capacities, Plaintiff asks that all MDOC records generated in connection with the events of April 9, 2010 be removed from his file. (*Id.* at ¶40). Against all Defendants in their individual capacities, Plaintiff seeks an award of compensatory and punitive damages. (*Id.*).

Defendants filed a Motion for Summary Judgment with supporting exhibits and affidavits (Doc. #9) and Plaintiff filed a response, supported by a Declaration and a number of exhibits (Doc. #10).

### C.    Standard of Review

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material

5

if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558, *quoting Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Id*., *quoting Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id*. at 560, *citing Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

### D.    Analysis

#### 1.    *Exhaustion of Claims Against VandeCasteele*

VandeCasteele argues that she is entitled to summary judgment in this matter because

Plaintiff failed to properly exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (Doc. #9 at 12-16). Acknowledging that Plaintiff did file a grievance against her regarding the events of April 9, 2010 (SLF-2010-04-528-17a), VandeCasteele states that Plaintiff failed to pursue that grievance through Step III of the appeals process. (*Id.* at 15). Citing the affidavit of Richard Russell, the Manager of MDOC's Grievance Section, VandeCasteele represents that a search of the MDOC database containing records of all Step III appeals shows that Plaintiff pursued only two appeals (SLF-2010-04-0519-27a and SLF-2010-05-0642-28a) through Step III while he was housed at SLF. (Doc. #9 at Ex. B, ¶18). In neither of those grievances did Plaintiff name VandeCasteele as the individual who caused him harm. (*Id.*). Thus, VandeCasteele argues that Plaintiff did not exhaust his administrative remedies as to her.

In response, Plaintiff attests that he filed a total of five grievances[2] during his time at SLF, three of them naming VandeCasteele: SLF-2010-04-0528-17a (dated April 11, 2010, regarding the alleged abusive treatment in the library on April 9, 2010); SLF-2010-05-582-28a (dated April 21, 2010, regarding the allegedly false and retaliatory 363 Work Evaluation); and SLF-2010-05-583-28a (dated April 21, 2010, regarding the allegedly false and retaliatory Lay-In Notice). (Doc. #10 at Exs. A1, A2, A3). Plaintiff apparently argues that one or more of his grievances against VandeCasteele were rejected as duplicative and, thus, he properly exhausted

---

[2] Two of these grievances were appealed through Step III of the grievance procedure and, thus, properly exhausted. These include grievances filed against Sholtz (SLF-2010-04-519-27a) – claiming that Sholtz wrote a false and retaliatory misconduct report – and against Mayfield and Best (SLF-2010-05-0642-28a) – alleging retaliatory dismissal from employment. (Doc. #10 at 5; Doc. #9 at Ex. B, ¶18).

his claims.[3]

### a.     Legal Standards Under the PLRA

Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his or her conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90. As the *Woodford* court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison

---

[3] In support of this argument, Plaintiff points to a letter dated May 10, 2010 from the Grievance Coordinator acknowledging receipt of and rejecting an unidentified grievance (which Plaintiff believes to be the Mayfield/Best grievance).  (Doc. #10 at Ex. A4).  The grievance at issue was rejected because it was duplicative of previously filed grievances, all of which were "based on the incident which lead [sic] to his termination as a legal writer."  (*Id.*).  The rejection letter advises that future references to "this grievance" should use identifier SLF-2010-05-642-28a (the identifier assigned to the grievance against Mayfield and Best alleging retaliatory dismissal from employment), which was ultimately appealed through Step III.  (*Id.*).

> administration has no alternative but to dismiss the grievance on
> procedural grounds.  We are confident that the PLRA did not create such a
> toothless scheme.

*Id.* at 95.  Thus, "an untimely or otherwise improper grievance, even though appealed through all

steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement."  *Fuqua v.*

*Straub*, 2009 WL 2602427 at *4 (E.D. Mich. Aug. 19, 2009).  Courts have recognized, however,

that prisoners are only required to exhaust *available* remedies, and, therefore, if defendants deny

a plaintiff access to the grievance process, "that process would not be 'available' to him, and its

exhaustion would not be required under §1997e(a)."  *Hull v. Baker*, 2011 WL 5361061 at *8

(W.D. Mich. Nov. 4, 2011).  Failure to exhaust is as an affirmative defense that must be raised

by a defendant, and on which the defendant bears the burden of proof.  *See Jones*, 549 U.S. at

216; *Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009).

　　　　In determining whether the plaintiff has properly exhausted his claim, the only relevant

rules "are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Block*,

549 U.S. 199, 200 (2007).   In Michigan's correctional facilities, prisoner grievances are

governed by MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances").  (Doc. #9 at

Ex. A (the "Policy," effective July 9, 2007)).  State prisoners must first complete the process

outlined in the Policy – including pursuing a grievance through "all three steps of the grievance

process – before the challenged conduct can be brought as a lawsuit.  (*Id.* at ¶B).  If a prisoner

cannot resolve his dispute with the staff member involved, he has five business days to file a

Step I grievance.  (*Id*. at ¶¶P, V).  "Information provided [in the Step I grievance] shall be

limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).

Dates, times, places, and **names of all those involved in the issue being grieved are to be**

**included.**"  (*Id.* at ¶R) (bold added).  If the prisoner is dissatisfied with the Step I response, he

may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days

after receipt of the Step I response, or if no timely response was received, within ten days of the date the response was due.  (*Id*. at ¶BB).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶FF).  The Policy provides that a grievance may be rejected by the Grievance Coordinator if it is "vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant."  (*Id*. at ¶G(1)).

   **b.**  **Plaintiff Failed to Exhaust His Claims Against VandeCasteele**

   Accepting as true Plaintiff's version of the facts – which the court must do at the summary judgment stage – Plaintiff filed three grievances during his time at SLF that named VandeCasteele:  SLF-2010-04-528-17a (regarding the alleged abusive treatment in the library on April 9, 2010), SLF-2010-05-582-28a (regarding the allegedly false and retaliatory 363 Work Evaluation), and SLF-2010-05-583-28a (regarding the allegedly false and retaliatory Lay-In Notice) (collectively, the "VandeCasteele Grievances").  (Doc. #10 at 5 and Exs. A1, A2, A3).  According to the affidavit submitted by Richard Russell, Manager of MDOC's Grievance Section, Plaintiff did not appeal any of the VandeCasteele Grievances to Step III, as required to satisfy the Policy's exhaustion requirements.  (Doc. #9 at Ex. B, ¶18).  Plaintiff presented no evidence to the contrary.

   Instead, Plaintiff asserts that he "firmly attached" the VandeCasteele Grievances to Grievance SLF-2010-05-642-28a, which he filed on May 5, 2010 against Mayfield and Best (the "Mayfield/Best Grievance"), and then pursued that latter grievance to Step III.[4]  (Doc. #10 at Declaration, ¶15).  It is this Mayfield/Best Grievance that was rejected at all three steps of the

---

[4] Plaintiff's assertion appears to be confirmed by a review of the Mayfield/Best Grievance, in which Plaintiff indicated that he "incorporates herein by reference, all allegations and requested relief asserted in Grievance:  REDACTED (Goldenrod copies) firmly attached hereto."  (Doc. #10 at 45).

grievance procedure as duplicative of previously-filed grievances.  (Doc. #9 at Ex. A).  Thus, Plaintiff argues that because he attached the three prior VandeCasteele Grievances (all of which were unexhausted) to the subsequently-filed Mayfield/Best Grievance, and because "Russell's affidavit (at ¶18) admits that [Plaintiff] submitted a Step III appeal for [the Mayfield/Best Grievance]; each of the grievances against VandeCasteele have been properly exhausted."  (Doc. #10 at Declaration, ¶15).  This argument fails for several reasons.

First, there is no dispute that Plaintiff did not directly appeal any of the three VandeCasteele Grievances to Step III.  Instead, he attached them to his Mayfield/Best Grievance, which he did exhaust.  However, the Policy contains no procedure by which Plaintiff could exhaust one group of grievances by simply attaching them to a subsequently-filed grievance that he then pursues to Step III.  Allowing this type of exhaustion could effectively eliminate the timelines contained in the Policy and could lead to confusion about which grievance(s) an inmate was pursuing.  Second, Plaintiff is wrong to blame the Step I Mayfield/Best Grievance response (Doc. #10 at 61) for his problems.  That response specifically recognized that Plaintiff's three VandeCasteele Grievances, having been the first ones he filed regarding the "original incident," were the operative ones.  *Id.*  It made clear that his Mayfield/Best Grievance was being rejected for being "duplicative" of those grievances.  However, rather than appealing any or all of the VandeCasteele Grievances, Plaintiff pursued only the Mayfield/Best Grievance.  Third, it bears mentioning that Plaintiff specifically disavowed an intent to challenge VandeCasteele's conduct through the Mayfield/Best Grievance.  On his Step II appeal form for the Mayfield/Best Grievance, Plaintiff specifically stated: "This complaint has nothing to do with Grievant's supervisor [VandeCasteele] but rather the retaliatory and discriminatory actions exhibited toward Grievant by J. Mayfield and K.A. Best. . . ."  (Doc. #10 at 46).  In sum, Plaintiff could have

pursued appeals of the VandeCasteele Grievances, but chose not to do so, rendering them unexhausted.

Finally, the cases Plaintiff cites where courts refused to dismiss an inmate's claims for non-exhaustion where the grievance at issue had been rejected as duplicative (Doc. #10 at 6) are inapposite. As noted, it was not the three VandeCasteele Grievances that were rejected as being duplicative of prior grievances, but rather the Mayfield/Best Grievance.[5]

For all of these reasons, Plaintiff did not properly exhaust his claims against VandeCasteele, and, thus, summary judgment is appropriate on Plaintiff's claims against her.

### 2.   *Plaintiff's First Amendment Retaliation Claims*

Plaintiff pleads First Amendment retaliation claims against all Defendants, alleging that they took various actions against him for filing complaints and grievances regarding misconduct by MDOC staff members.

### a.   **Elements of a Retaliation Claim**

To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct[6]; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378,

---

[5] Notably, Defendants do not argue that Plaintiff failed to exhaust his claims against Mayfield and Best that he raised in the Mayfield/Best Grievance. If they did, the cases cited by Plaintiff might be relevant as to those claims.

[6] Here, the alleged "protected conduct" consists of Plaintiff's complaint to the Warden's Office regarding alleged staff misconduct, his threat to file grievances regarding the same, and the subsequent grievances that he actually filed. (Doc. #1 at ¶¶1, 6, 19-20). The parties do not appear to dispute that a prisoner's complaints, grievances and threats to file grievances can constitute "protected conduct" under the First Amendment. *See Pasley v. Conerly*, 345 Fed. Appx. 981, 984-85 (6th Cir. 2009). Therefore, for purposes of Defendants' motion, the court will assume that this prong of Plaintiff's retaliation claim has been satisfied.

394 (6th Cir. 1999).  The plaintiff must prove that "the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), *citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  If the plaintiff is able to make that showing, the burden shifts to the defendant to show that the same action would have been taken even in the absence of the protected conduct.  *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 399.

### b.      Defendant Sholtz

Plaintiff alleges that, in retaliation for the written complaint Plaintiff purportedly sent to the Warden's Office on March 18, 2010, and Plaintiff's threat to file a grievance against Sholtz on April 9, 2010, Sholtz retaliated against Plaintiff by issuing him an MMR on April 10, 2010. (Doc. #1 at ¶¶1-7).

Assuming that Plaintiff's written complaint and threatened grievance are protected activity, and the MMR constitutes an "adverse action,"[7] Plaintiff has not shown that a causal link exists between the protected activity and the adverse action.  Although Plaintiff asserts that a copy of his formal complaint was served on Sholtz (Doc. #1 at ¶1), Sholtz states in his sworn affidavit that this was not the case and he had no knowledge of Plaintiff's complaint to the Warden's Office.  (Doc. #9 at Ex. E, ¶3).  Similarly, Sholtz denies that Plaintiff "talk[ed] to [him] about any issues or resolving any grievances."  (*Id.* at Ex. E, ¶4).  Regardless, however, even if Plaintiff had established a causal link, Defendants have demonstrated that Sholtz would have issued the MMR even in the absence of Plaintiff's protected activity.

Sholtz submitted an affidavit attesting that, on April 9, 2010, Plaintiff's supervisor,

---

[7] The Sixth Circuit has held that charging a prisoner with a major misconduct is sufficiently adverse to "deter a person of ordinary firmness" from exercising his rights.  *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (noting that the issuance of a major misconduct charge can subject an inmate to "the risk of significant sanctions").

VandeCasteele, was looking for Plaintiff because he was supposed to accompany her to another housing unit.  (*Id*. at 18 and Ex. E, ¶7).  VandeCasteele had called the unit and nobody could locate Plaintiff, so Sholtz searched the Programs Building until he found Plaintiff in the quartermaster area.  (*Id*.).  Sholtz states that he asked which staff member had given Plaintiff permission to be there at that time, and Plaintiff could not produce a name.  (*Id*.).  Sholtz states that he told Plaintiff to report to his supervisor, who was looking for him, and then wrote the misconduct ticket because Plaintiff had been at the quartermaster area without permission from staff or the control center.  (*Id*.).  Sholtz denies that the MMR was issued in retaliation for Plaintiff's prior written complaint or his threat to file a grievance.  (*Id.* at Ex. E, ¶¶7-12).

Although Plaintiff asserts that Sholtz was not justified in issuing the MMR, he does not deny that he did not have his supervisor's permission to be in the quartermaster's area at the time in question and, thus, technically was out of place.  Rather, he argues now – as he did at the misconduct hearing – that because his work schedule precluded him from getting to the quartermaster during business hours, he was allowed to go there on Fridays during his work day. (Doc. #10 at Ex. C).  He further argues that the fact that the ALJ found him "not guilty" of the misconduct in question establishes that the MMR was retaliatory in nature.[8]  (Doc. #10 at 14-15). However, that argument suffers from a logical flaw; simply because Plaintiff was ultimately found not guilty of the alleged misconduct does not mean that the misconduct issued was necessarily retaliatory in nature.  *See, e.g., King v. Zamiara*, 150 Fed. Appx. 485 (6th Cir. 2005) (no evidence that misconduct issued was retaliatory in nature, even where plaintiff was found not

---

[8] At the misconduct hearing on April 28, 2010, the ALJ found that Plaintiff had a job detail that conflicted with normal business hours for the quartermaster window, and that Fridays were generally kept open by the quartermaster for inmates with such conflicts.  (Doc. #10 at Ex. C). The ALJ further found that Plaintiff "was authorized by quartermaster staff to be at the quartermaster window without a pass or itinerary" on April 9, 2010.  (*Id*.).

guilty of alleged misconduct); *Shulick v. Michigan Dept. of Corrs.*, 2011 WL 2654261 (W.D. Mich. July 6, 2011) (same).

Defendants have presented evidence establishing that, even in the absence of Plaintiff's protected activity, Sholtz believed that Plaintiff was out of place and, thus, would have issued the MMR. Plaintiff presented only the flawed presumption noted in the preceding paragraph to counter that showing. He thus failed to carry his burden, *Wrench LLC.,* 256 F.3d at 453; *Alexander*, 576 F.3d at 558, and summary judgment should be granted on Plaintiff's retaliation claim against Sholtz.

### c.      Defendants Mayfield and Best

Plaintiff also alleges that, in retaliation for the filing of written complaints and grievances, Mayfield and Best retaliated against him by terminating his prison employment on May 3, 2010. (Doc. #1 at ¶¶19-21). Again, assuming that Plaintiff has satisfied the first and second prongs of his retaliation claim – that he engaged in protected activity and that the termination of his prison employment constituted an adverse action – Mayfield and Best argue that summary judgment is appropriate because Plaintiff failed to establish a causal link and because they would have taken the same action even in the absence of Plaintiff's protected activity. (Doc. #9 at 19-22); *see also Thaddeus-X*, 175 F.3d at 399.

Defendants first argue that Plaintiff failed to establish a causal link between the protected activity and adverse action, asserting that Plaintiff "failed to present any evidence demonstrating that the alleged protected conduct was a factor in defendants' actions in this matter." (Doc. #9 at 21-22). This is not necessarily true, however, as Plaintiff avers in his complaint that Mayfield and Best told him he was being terminated from employment "because there were too many problems between Plaintiff and staff members" and because he had been causing problems by

"writing grievances and making unnecessary complaints against staff."  (Doc. #1 at ¶¶21, 23).

Although Defendants deny that such statements were made (Doc. #9 at Ex. F, ¶4), there likely

exists a genuine issue of material fact on this issue.

Regardless, however, Defendants have offered substantial evidence demonstrating that

they would have terminated Plaintiff's employment even in the absence of his protected activity.

Plaintiff was issued an MMR while on a work assignment when he was found out of place.  (*Id.*

at Ex. F, ¶8).  As a result, Mayfield approved a Lay-In Notice on Plaintiff in accordance with

both SLF Operating Procedure 05.01.100C(O)[9] ("Prisoner Work Assignments") and MDOC

Policy Directive 05.01.100(CC)[10] ("Prisoner Program Classification").  (*Id.* at Ex. F, ¶5, Ex. G,

Ex. I).  Plaintiff was subsequently terminated from employment pursuant to PD 05.01.100(EE),

which states: "The prisoner shall not be returned to the same assignment if the Classification

Director determines it to be a threat to the safety or security of the facility."  (*Id.* at Ex. F, ¶6, Ex.

G, ¶EE).

Prison officials have wide latitude when taking actions designed to protect the safety and

security of their facilities.  *See, e.g., Vallina v. Meese*, 704 F. Supp. 769, 772 (E.D. Mich. 1989)

("The safety of an institution's inmates and guards is perhaps the most fundamental

responsibility of the prison administration."); *Murphy v. Lockhart*, 826 F. Supp. 2d 1026, 1034

(E.D. Mich. 2011) (". . . prison officials are accorded wide latitude in the adoption and

application of prison policies and procedures.").  Here, where Defendants have established that

---

[9] This regulation provides: "If a prisoner receives a major misconduct while on assignment, he
will be laid-in pending the outcome of the misconduct related to his assignment.  If found guilty,
the prisoner will be removed from his assignment.  If found not-guilty, the prisoner will be
reinstated with back-pay."

[10] This regulation provides: "With prior approval of the Warden or designee, a prisoner who is
charged with any misconduct may be temporarily suspended (i.e., "laid in") from his/her
assignment pending the misconduct hearing. . . ."

16

that they believed Plaintiff's continued employment was a threat to the safety and security of the prison environment, they have sufficiently demonstrated that Plaintiff would have been terminated from employment regardless of his protected activity.[11]   Consequently, summary judgment should be granted on Plaintiff's retaliation claim against Mayfield and Best.[12]

### 3.   *Plaintiff's Equal Protection Claim Against Mayfield and Best*

In Count IV of his Complaint, Plaintiff alleges that he was treated differently than other, similarly situated individuals, in violation of the Equal Protection Clause, when he was terminated from his prison employment.  (Doc. #1 at ¶¶25-39).

---

[11] As with the issuance of an MMR, *supra* at 14, the two above-quoted regulations specifically contemplate that a prisoner can be properly "laid in" even if he ultimately is acquitted of the underlying charges.

[12] Plaintiff also alleges that, in retaliation for the written complaint he sent to the Warden's Office on March 18, 2010, as well as the grievance he threatened to file on April 9, 2010, VandeCasteele retaliated against him by (1) suspending him from his job and issuing him a Lay-In Notice, (2) issuing him a negative 363 Work Evaluation, and (3) submitting a false statement to the ALJ in support of the MMR issued to Plaintiff by Sholtz.  (Doc. #1 at ¶¶8-14).  As set forth above, Plaintiff did not properly exhaust his retaliation claim against VandeCasteele; even if he had, however, summary judgment would be appropriate on this claim because VandeCasteele has established that she would have taken the same actions even in the absence of any protected activity.

In her affidavit, VandeCasteele specifically stated that, as a result of the MMR issued to Plaintiff by Sholtz, "a Lay-In Notice (CSJ-120) was filled out and sent for approval pending the outcome of the misconduct hearing."  (Doc. #9 at Ex. C, ¶12).  Thus, regardless of Plaintiff's protected activity, once he received the MMR while on assignment, he was also going to receive a Lay-In Notice.  (Doc. #9 at Ex. G, ¶O).  And, the evidence establishes that VandeCasteele completed the 363 Work Evaluation because Plaintiff was loud and argumentative when questioned by his supervisor about why he was late in reporting for his assignment, not because of his protected activity.  (Doc. #9 at Ex. C, ¶¶12-15 and Ex. D).  In the face of this evidence, Plaintiff offered only his own speculation and unsupported assertions, and thus failed to meet his summary judgment burden.  *Wrench LLC.*, 256 F.3d at 453; *Alexander*, 576 F.3d at 558.  Finally, with respect to the allegedly retaliatory "statement" submitted by VandeCasteele in support of the MMR issued by Sholtz, it appears that VandeCasteele did nothing more than report to the ALJ that she had not authorized Plaintiff to be in the quartermaster's area at the time in question. (Doc. #10 at Ex. C).  There is no evidence in the record indicating that this statement, by itself, is false.  Accordingly, VandeCasteele has established that she would have taken the three alleged adverse actions at issue even in the absence of Plaintiff's protected activity.

The purpose of the Equal Protection Clause of the Fourteenth Amendment is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, and to state an equal protection claim, a §1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *See Umani v. Michigan Dept. of Corrs.*, 432 Fed. Appx. 453, 458 (6th Cir. 2011); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citations omitted). Generally, an equal protection claim can be proven through either direct evidence of discrimination, or under the *McDonnell Douglas* "burden-shifting scheme." *See McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Umani*, 432 Fed. Appx. at 460. "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani*, 432 Fed. Appx. at 458. In the absence of direct evidence of discrimination, a plaintiff bringing an equal protection claim in an employment context must show: "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or was treated differently than similarly-situated members of the unprotected class." *Id., citing Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007); *Lautermilch v. Findlay City Schools*, 314 F.3d 271, 275 (6th Cir. 2003).

When a plaintiff attempts to state an equal protection claim, but does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called "class of one" theory and must prove that the government's actions lacked any rational basis. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). To demonstrate that he was "similarly

situated" to other comparable employees, a plaintiff must show that "'all of the *relevant* aspects of his employment situation were "nearly identical" to those of [a comparable worker's] employment situation.'"   *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998), *quoting Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994); *see also Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008).  The "'class-of-one' theory is generally not used in employment contexts due to the subjective nature of employment decisions.'" *Umani*, 432 Fed. Appx. at 461, *citing Engquist v. Oregon Dep't of Agric*., 553 U.S. 591, 594 (2008).  Under rational basis scrutiny, state action violates an individual's constitutional rights only if it is "'so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"   *Id*., *quoting Warren v. City of Athens*, 411 F.3d 697, 710, (6th Cir. 2005)).  A plaintiff can make that showing "either by negating every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will."   *Id*. at 461.

Here, Plaintiff has identified two other inmates who received major misconduct tickets but who did not lose their prison jobs as a result – Prisoner Crowley and Prisoner Stewart.  (Doc. #1 at ¶28).  However, the evidence establishes that neither of these inmates received an MMR *while on a work assignment*, and, thus, neither was similarly situated to Plaintiff in all relevant respects.  (Doc. #10 at Ex. F, ¶¶8-9).

SLF Operating Procedure 05.01.100C(O) provides: "If a prisoner receives a major misconduct <u>while on assignment</u>, he will be laid-in pending the outcome of the misconduct related to his assignment."  Plaintiff received his MMR while working and, thus, received a Lay-In Notice.  (Doc. #9 at Ex. F, ¶¶8).  In contrast, neither Prisoner Crowley nor Prisoner Stewart received a Lay-In Notice because they were not working when they received their respective

MMRs.  (*Id.* at Ex. F, ¶¶8, 12).  Likewise, Plaintiff's employment was terminated, pursuant to Policy Directive 05.01.100(EE), after he received an MMR while on assignment because it was determined that returning him to his prior assignment would be a "threat to the safety or security of the facility."  (Doc. #10 at Ex. I, ¶EE; Ex. H, ¶6, Ex. F, ¶6).  Neither Prisoner Crowley nor Prisoner Stewart was terminated from prison employment because they did not receive an MMR while working.  (*Id.*).

There simply is no evidence that Plaintiff was "intentionally and arbitrarily" discriminated against.  Rather, where Plaintiff was laid-in and terminated pursuant to MDOC policy after receiving a misconduct while on assignment (unlike Prisoners Crowley and Stewart), the evidence establishes that Defendants' actions were rationally related to a legitimate government purpose as discussed above. *See supra* at 16.  The alleged comparables simply were not similarly situated to Plaintiff in all relevant respects, and Plaintiff's Equal Protection claim should be dismissed.

### 4.    *Plaintiff's §1983 Conspiracy Claims*

Plaintiff pleads §1983 conspiracy claims against VandeCasteele and Sholtz, alleging that "each of them conspired with one another to write a misconduct ticket [as well as a false employee witness statement] against Plaintiff, which ultimately resulted in Plaintiff's reclassification and subsequent termination."  (Doc. #1 at ¶¶1-18; Doc. #10 at 21-22).

The Sixth Circuit has recently stated the standard that governs a §1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011), *quoting Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). In addition, the plaintiff must "present facts that the conspirators agreed to commit an act which deprived the plaintiff of a right, privilege or immunity secured by the Constitution or by laws of the United States." *Williams v. Kling,* 849 F. Supp. 1192, 1196 (E.D. Mich. 1994), *quoting Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988).

In this case, Plaintiff alleges that Sholtz and VandeCasteele conspired with each other to issue the MMR, which ultimately resulted in his reclassification and subsequent termination. (Doc. #1 at ¶¶1-18). Plaintiff fails to meet the above standards as he offers only the conclusory allegations that there was a "meeting of the minds" between Sholtz and VandeCasteele and that they acted "in concert with one another." He offered no evidence that Sholtz and VandeCasteele discussed the issuance of the MMR and/or the role each would play at the misconduct hearing. Sholtz and VandeCasteele each submitted an affidavit making clear that no meetings took place between them – whether to discuss the MMR or for some other purpose. (Doc. #9 at Ex. C, ¶13 and Ex. E, ¶¶8, 11). Summary judgment is appropriate on this claim because Plaintiff simply presented no evidence that Sholtz and VandeCasteele acted in concert to deprive him of his rights under the Constitution. *Wrench LLC.,* 256 F.3d at 453; *Alexander*, 576 F.3d at 558.

Moreover, even if Plaintiff could prove the existence of a conspiracy, he cannot demonstrate that he suffered a constitutional deprivation, since Defendants have already established that summary judgment is appropriate on Plaintiff's retaliation and Equal Protection claims. *See Scott v. Stone*, 254 Fed. Appx. 469, 474-75 (6th Cir. 2007) (noting that success on conspiracy claim is dependent on proving deprivation of a constitutional right). Because proof of a constitutional deprivation is a necessary element of a §1983 conspiracy claim, summary

judgment is warranted.

### 5.       *Qualified Immunity*

Defendants also argue that because their actions were objectively reasonable under the circumstances, and because they did not violate Plaintiff's clearly established constitutional rights, Plaintiff's claims are barred by the doctrine of qualified immunity.  (Doc. #9 at 25-27).

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is an immunity from suit and not a mere defense to liability.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001).  In conducting the two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established, the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).   In this case, as set forth above, Plaintiff's claims for First Amendment retaliation, conspiracy, and violation of the Equal Protection Clause are without merit.  Thus, where Plaintiff has failed to show the violation of a clearly established constitutional right, summary judgment is appropriate on qualified immunity grounds as well.[13]

---

[13] Defendants also argue that, to the extent they are sued in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment.  (Doc. #9 at 18-19).  Because the court has already recommended that summary judgment be granted in Defendants' favor, however, it need not reach the merits of this argument.

### III.    CONCLUSION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [9] be **GRANTED**.

Dated: July 11, 2012                    s/ David R. Grand
                                        DAVID R. GRAND
                                        UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record

and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 11, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager