UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WALTER LEE JONES BEY,

       Plaintiff,                                Case No. 11-13115
                                                           Honorable Thomas L. Ludington

v.

D. VANDECASTEELE, et al.,

       Defendants.
                                               /

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff Walter Lee Jones Bey filed a complaint pursuant to 42 U.S.C. § 1983 against four officials with the Michigan Department of Corrections (MDOC). Plaintiff's complaint alleges violations of his constitutional rights. Defendants moved for summary judgment in September 2011, and the motion was referred to Magistrate Judge David R. Grand.

On July 11, 2012, the magistrate judge issued a report recommending that Defendants' motion for summary judgment be granted. After no objections were filed, the report was adopted on August 3, 2012. Two weeks later, Plaintiff filed a motion for reconsideration.

Plaintiff claims that he did not receive the report filed on July 11, and therefore had no opportunity to file objections. Judge Grand's docket, however, indicates no return mail from the issuance of the Report and Recommendation. Further, Plaintiff's address did not change during that time, and he received court documents before and after July 2012. There is simply nothing to indicate the report did not reach its intended destination.

Nevertheless, upon review of Plaintiff's claims, granting Defendant's motion for summary judgment is appropriate.

# I

## A

Plaintiff is incarcerated by the MDOC. During the events that led to this lawsuit, he was housed at the St. Louis Correction Facility (SLF) in St. Louis, Michigan. All of the named Defendants are SLF employees: Assistant Deputy Warden Kelly Best, Classification Director Julius Mayfield, and Corrections Officers Dujuna VandeCasteele and Ray Sholtz.

For a time, Plaintiff acted as an Assistant Librarian at SLF, working as a legal writer in the law library under VandeCasteele's supervision. He claims that on March 18, 2010, he submitted a written complaint to the SLF Warden's office concerning a conversation he overheard between VandeCasteele and Sholtz. Plaintiff claims the two officers exhibited "staff misconduct," and he sought to report them. Pl.'s Compl. 5, ECF No. 1.

According to Plaintiff, Sholtz harassed him when the two met in a hallway near the law library three weeks later. *Id*. Plaintiff claims he attempted to resolve the dispute, but Sholtz threatened to write a misconduct ticket because of the filed complaint. *Id*. at 5–6. Plaintiff claims that after encountering Sholtz in the hall and upon entering the law library, VandeCasteele "began using profane and abusive language toward Plaintiff when inquiring why Plaintiff had been in the quartermaster; as he had made her late for rounds in segregation." *Id*. at 7. Plaintiff says he told VandeCasteele that he had received permission from another staff member to be at the quartermaster, and further that he planned to file a grievance "regarding her abusive, demeaning, and humiliating language." *Id*. He claims she responded with a burst of colorful language and sent him to his housing unit to lock-up; that he was "laid-in for the day." *Id*. at 8.

On the same day, April 9, 2010, Sholtz wrote a Major Misconduct Report (MMR) concerning Plaintiff, in which he named VandeCasteele as an "employee witness." Sholtz alleged that "[d]uring his detailed hours, I observed [Plaintiff] in the quartermaster area. [Plaintiff] is detailed as a legal writer in the law library . . . [a]t no time did [Plaintiff] have permission from any staff member to be in that area or not on his detail." *Id*. at 6. Plaintiff believes he was not out of place, committed no MDOC violations, and that VandeCasteele submitted a false statement to the Administrative Law Judge in support of Sholtz's MMR. *Id*. at 6, 8. Plaintiff alleges that VandeCasteele, "in an act of retaliation and in concert with Defendant Sholtz," also requested he be suspended from his job and filled out a negative work evaluation against him. *Id*. at 8.

Between April 11 and April 23, 2010, Plaintiff filed a number of letters, grievances, and complaints alleging staff corruption, falsification of misconduct reports, and retaliatory suspension from his job. *Id*. at 9–10. Plaintiff reports that on May 3, 2010, Defendants Mayfield and Best met with him and informed him that he was being terminated from his employment in the law library. They asserted that there were too many problems between Plaintiff and the other staff members, including Defendants, and that his termination was necessary. *Id*. at 10. Mayfield and Best grounded their decision in MDOC Policy Directive 05.01.100, claiming Plaintiff's conduct had violated the integrity of his work assignment and created a security risk. *Id*. at 11. Plaintiff finally alleges that he was treated differently than similarly situated prisoners, naming two inmates who received MMRs but were not suspended or terminated from their work assignments. *Id*. at 11–12.

**B**

Plaintiff's four-count complaint states the following claims: (1) as to Sholtz, First Amendment retaliation and conspiracy claims related to the April 9, 2010 MMR; (2) as to VandeCasteele, First Amendment retaliation and conspiracy claims related to the April 9, 2010 work evaluation, the request for Plaintiff's suspension from his job, and the investigation statement submitted to the ALJ in support of Sholtz's MMR; (3) as to Mayfield and Best, a First Amendment retaliation claim with respect to the termination of his position as a legal writer; and (4) as to Mayfield and Best, a Fourteenth Amendment equal protection claim related to his treatment as compared to similarly situated inmates. Naming Defendants VandeCasteele, Mayfield, and Best in their official capacities, Plaintiff asks that all MDOC records generated in connection with the April 9, 2010 events be removed from his file. Against all Defendants as individuals, Plaintiff seeks compensatory and punitive damages.

**II**

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Generally, all justifiable inferences from the evidence must be drawn in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (quoting *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### III

In total, Plaintiff has alleged First Amendment retaliation claims against VandeCasteele, Sholtz, Mayfield, and Best; Equal Protection Claims against Mayfield and Best; and § 1983 conspiracy claims against VandeCasteele and Sholtz.  Each will be addressed below.

### A

Plaintiff's claims against VandeCasteele were never properly exhausted as required under the Prison Litigation Reform Act (PLRA) and must be dismissed.  Failure to exhaust is as an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Block*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x. 885, 888 (6th Cir. 2009).  In determining whether the plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.

In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130.  Defs.' Mot. Ex. B, ECF No. 9.  Prisoners must pursue a grievance through "all three steps of the grievance process" before the challenged conduct can be brought as a lawsuit. *Id*. at ¶ B.  Plaintiff does not dispute that he did not directly appeal any of his grievances against VandeCasteele to step III.  Instead, he claims he attached them to other grievances which he did exhaust. Pl.'s Resp. 4.  The Prison Grievance Policy, however, establishes no procedure by which Plaintiff can exhaust one grievance, never directly appealed to step III, by simply attaching it to another grievance which was.  Plaintiff did not independently pursue his claims against VandeCasteele to step III of the grievance process, and he did not exhaust his claims against her.  Summary judgment is therefore appropriate in her favor.

**B**

Plaintiff alleges that all the Defendants retaliated against him after he filed complaints and grievances regarding their conduct. These First Amendment retaliation claims also fail as a matter of law.

To establish a First Amendment retaliation claim, a plaintiff must show: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff must prove that "the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff is able to make that showing, the burden shifts to the defendant to show that the same action would have been taken even in the absence of the protected conduct. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 399.

**1**

Plaintiff claims that Sholtz retaliated against him for his original March 18, 2010 complaint (against Sholtz and VandeCasteele) and his threat to file a grievance against Sholtz on April 9, 2010. Plaintiff points to Sholtz's April 9, 2010 MMR as the retaliatory act. However, Plaintiff has not shown a causal link between protected activity and an adverse action.[1] Defendants have demonstrated that Sholtz would have issued the MMR even in the absence of Plaintiff's protected activity.

Sholtz submitted an affidavit stating that VandeCasteele was looking for Plaintiff on April 9, 2010, as he was supposed to accompany her to another housing unit. Defs.' Resp. Ex. E,

---

[1] Even assuming that Plaintiff's conduct was protected and Sholtz's MMR was an adverse action.

¶ 7. Plaintiff was not located until Sholtz searched the Programs Building and found Plaintiff in the quartermaster area. *Id*. When asked who had given him permission to be there, Plaintiff could not produce a name. *Id*. Sholtz indicates that he wrote the MMR because Plaintiff was out of place without permission, and that it was not issued in retaliation for Plaintiff's complaint. *Id*. at ¶¶ 7–12. Plaintiff has not shown that he had permission at the time in question to be at the quartermaster, and he was technically out of place. Because the MMR would have issued even in the absence of protected activity (Plaintiff's complaint), summary judgment is warranted on Plaintiff's retaliation claim against Sholtz.

**2**

Plaintiff also claims that Mayfield and Best retaliated against him by terminating his prison employment on May 3, 2010. Mayfield and Best have adequately indicated the termination would have occurred regardless of Plaintiff's protected activity, and summary judgment is appropriate in their favor.

MDOC Prison Directive 05.01.100 establishes that a "prisoner shall not be returned to the same assignment if the Classification Director determines it to be a threat to the safety or security of the facility." Defs.' Mot. Ex. I, ¶ EE. Prison officials have wide latitude when taking actions designed to protect the safety and security of their facilities. *See Vallina v. Meese*, 704 F. Supp. 769, 772 (E.D. Mich. 1989) ("The safety of an institution's inmates and guards is perhaps the most fundamental responsibility of the prison administration."); *Murphy v. Lockhart*, 826 F. Supp. 2d 1026, 1034 (E.D. Mich. 2011) ("prison officials are accorded wide latitude in the adoption and application of prison policies and procedures.").

Defendants have established that Plaintiff was out of place without permission, and his continued employment could be a threat to the safety and security of the prison environment. It

was well within their authority to terminate his position under those circumstances. Because Defendants have sufficiently demonstrated that Plaintiff would have been terminated from employment whether he issued complaints and filed grievances or not, summary judgment is appropriate on Plaintiff's retaliation claims against Mayfield and Best.[2]

C

Plaintiff next claims that he was treated differently than other, similarly situated individuals in violation of the Equal Protection Clause when he was terminated from his prison employment. Upon review, this claim does not pass muster.

The Equal Protection Clause of the Fourteenth Amendment is aimed at protecting every person within the State's jurisdiction against intentional and arbitrary discrimination. To state a claim, a § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *Umani v. Michigan Dept. of Corrs.*, 432 F. App'x 453, 458 (6th Cir. 2011); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Generally, an equal protection claim can be proven through either direct evidence of

---

[2] Plaintiff also alleges that VandeCasteele retaliated against him by (1) suspending him from his job and issuing him a Lay-In Notice, (2) issuing a negative 363 Work Evaluation, and (3) submitting a false statement to the ALJ in support of Sholtz's April 9, 2010 MMR. As set forth above, Plaintiff did not properly exhaust his retaliation claim against VandeCasteele; but even if he had summary judgment would be appropriate — VandeCasteele has established that she would have taken the same actions even in the absence of any protected activity. In her affidavit, VandeCasteele specifically stated that, as a result of the MMR issued to Plaintiff by Sholtz, "a Lay-In Notice (CSJ-120) was filled out and sent for approval pending the outcome of the misconduct hearing." Defs.' Mot. Ex. C ¶ 12. Thus, regardless of Plaintiff's protected activity, once he received the MMR while on assignment, he was also going to receive a Lay-In Notice. Defs.' Mot. Ex. G, ¶ O. And, the evidence establishes that VandeCasteele completed the 363 Work Evaluation because Plaintiff was loud and argumentative when questioned by his supervisor about why he was late in reporting for his assignment, not because of his protected activity. Defs.' Mot. Ex. C, ¶¶ 12–15; Ex. D. In the face of this evidence, Plaintiff offered only his own speculation and unsupported assertions, and thus failed to meet his summary judgment burden. *Wrench LLC.*, 256 F.3d at 453; *Alexander*, 576 F.3d at 558. Finally, with respect to the allegedly retaliatory "statement" submitted by VandeCasteele in support of the MMR issued by Sholtz, it appears that VandeCasteele did nothing more than report to the ALJ that she had not authorized Plaintiff to be in the quartermaster's area at the time in question. Pl.'s Resp. Ex. C. There is no evidence in the record indicating that this statement, by itself, is false. Accordingly, VandeCasteele has established that she would have taken the three alleged adverse actions at issue even in the absence of Plaintiff's protected activity.

discrimination, or under the *McDonnell Douglas* "burden-shifting scheme." *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani*, 432 F. App'x at 458. In the absence of such evidence, Plaintiff must show that he: "(1) is a member of a protected group, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside of the protected class or was treated differently than similarly-situated members of the unprotected class. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

When a plaintiff attempts to state an equal protection claim but does not allege that the government's actions burden a fundamental right or target a suspect class, as here, the plaintiff is said to proceed on a so-called "class of one" theory. In such a situation, the plaintiff must prove the government's actions lacked any rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To demonstrate that he was "similarly situated" to other comparable employees, a plaintiff must show that "all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [a comparable worker's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) (emphasis in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Here, Plaintiff has identified two other inmates who received MMR tickets but who did not lose their prison jobs as a result: Prisoner Crowley and Prisoner Stewart. Pl.'s Compl. 11. However, neither of these inmates received an MMR *while on a work assignment*, and consequently, neither was similarly situated to Plaintiff in all relevant respects. Pl.'s Resp. Ex. F, ¶¶ 8–9. Plaintiff has not shown other Prisoners who received MMRs while on work

assignments but have been able to keep their positions. He has not shown he was treated differently from similarly-situated individuals, and there simply is no evidence that he was "intentionally and arbitrarily" discriminated against. Rather, Planitiff was terminated pursuant to MDOC policy after receiving an MMR while on assignment, and that termination was rationally related to prison safety. Plaintiff's equal protection claim was appropriately dismissed.

**D**

Finally, Plaintiff alleges that VandeCasteele and Sholtz conspired with one-another to write a misconduct ticket and give a false statement against him. This claim is without merit.

The Sixth Circuit has recently stated the standard that governs a § 1983 conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). In addition, the plaintiff must "present facts that the conspirators agreed to commit an act which deprived the plaintiff of a right, privilege or immunity secured by the Constitution or by laws of the United States." *Williams v. Kling*, 849 F. Supp. 1192, 1196 (E.D. Mich. 1994) (quoting *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988)).

In this case, Plaintiff alleges that Sholtz and VandeCasteele conspired with each other to issue the MMR, which ultimately resulted in his reclassification and subsequent termination. But he does not meet the above standards, only offering conclusory allegations that there was a "meeting of the minds" between Sholtz and VandeCasteele and that they acted "in concert with

one another." He offered no evidence that Sholtz and VandeCasteele discussed the issuance of the MMR or the role each would play at the misconduct hearing. Sholtz and VandeCasteele each submitted an affidavit making clear that no meetings took place between them — whether to discuss the MMR or for any other purpose. Defs.' Mot. Ex. C, ¶13; Ex. E, ¶¶ 8, 11. Summary judgment is appropriate on this claim because Plaintiff simply presented no evidence that Sholtz and VandeCasteele acted in concert to deprive him of his rights under the Constitution.

Moreover, even if Plaintiff could prove the existence of a conspiracy, he cannot demonstrate that he suffered a constitutional deprivation. *See Scott v. Stone*, 254 F. App'x. 469, 474–75 (6th Cir. 2007) (noting that success on conspiracy claim is dependent on proving deprivation of a constitutional right). Because proof of a constitutional deprivation is a necessary element of a §1983 conspiracy claim, which Plaintiff has not shown, summary judgment is warranted on his conspiracy claim as well.

E

Defendants argue that because their actions were objectively reasonable under the circumstances, and because they did not violate Plaintiff's clearly established constitutional rights, Plaintiff's claims are barred by the doctrine of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court must conduct a two-step inquiry into whether the facts, viewed in the light most favorable to the plaintiff, permit a reasonable juror to find that (1) the defendant violated a constitutional right;

and (2) the right was clearly established. During this analysis, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, as set forth above, Plaintiff's claims for First Amendment retaliation, conspiracy, and violation of the Equal Protection Clause are without merit. Thus, where Plaintiff has failed to show the violation of a clearly established constitutional right, summary judgment is appropriate on qualified immunity grounds as well.

Plaintiff has not sufficiently indicated why he was unable to file his objections to the magistrate judge's report and recommendation, but more importantly, even when reviewed, his claims are meritless. Summary judgment is appropriate in Defendants' favor on all counts.

**IV**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 19, is **DENIED**.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: November 28, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and on Walter Lee Jones Bey #235079, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, Michigan 48048 by first class U.S. mail on November 28, 2012.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS